IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**BRE-ANNA MICHELLE LANGFORD**,

       Plaintiff,

       v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security Administration,

       Defendant.
_____

Civ. No. 6:13-cv-00444-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

      Plaintiff Bre-Anna Langford brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court is asked to consider (1) whether the ALJ erred in evaluating the evidence submitted by plaintiff, lay witness, Tabitha Langford, and treating physician, Dr. Miller, and (2) whether the ALJ relied on erroneous Vocational Expert (VE) testimony. Because the ALJ articulated sufficient reasons supported by substantial evidence in the record for his evaluation of the respective evidence, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

      Plaintiff applied for SSI on March 12, 2009, alleging disability since January 1, 2004 (later amended to March 12, 2009). Tr. 12, 32, 154. These claims were denied initially and upon

1 – OPINION AND ORDER

reconsideration. Tr. 12, 91–100. Plaintiff timely requested a hearing before an administrative law judge (ALJ), and appeared before the Honorable Michael Gilbert on September 20, 2011. Tr. 12, 29–90. ALJ Gilbert denied plaintiff's claims by written decision dated December 20, 2011. Tr. 12–23. Plaintiff sought review from the Appeals Council, which was subsequently denied, tr. 1–3, thus rendering the ALJ's decision final. Plaintiff now seeks judicial review.

Plaintiff, born on December 6, 1990, tr. 21, 154, completed the eleventh grade, tr. 36, and, at the time of hearing, was enrolled in online high school through Lane Technical Learning Center, tr. 36, 50, 273–74. Plaintiff was eighteen at the time of alleged disability onset, and twenty at the time of hearing. *See* tr. 33, 154.[1] Plaintiff alleges disability due to: diabetes type-I with neuropathy; obesity; gastroparesis; fibromyalgia; adjustment disorder with anxiety and depressive mood; pain disorder with psychological features, and chronic irritable bowel syndrome (IBS). Tr. 14; Pl.'s Br. 1, ECF No. 17.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

---

[1] Plaintiff was a "[y]ounger person" at the time of alleged disability onset and at the time of hearing. *See* 20 C.F.R. § 404.1563(c).

2 – OPINION AND ORDER

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*.

Plaintiff contends that the ALJ erred in formulating and applying plaintiff's RFC under step four and five of the sequential evaluation.[2] In particular, plaintiff argues that: (1) the ALJ erred in evaluating plaintiff's testimony; (2) the ALJ erred in evaluating Tabitha Langford's testimony; (3) the ALJ erred in evaluating Dr. Miller's medical evaluation; and (4) the ALJ relied on erroneous VE testimony.

## I. Plaintiff's Testimony

Plaintiff contends that the ALJ improperly rejected her testimony. Pl.'s Br. 12–17, ECF No. 17. In response, defendant argues that substantial evidence supports the ALJ's credibility findings. Def.'s Br. 5, 8–9, ECF No. 18.

---

[2] The ALJ found that plaintiff had the RFC to:

> [P]erform light work . . . except that the claimant is limited to standing up to 6 hours out of an 8-hour work-day, and secondary to fatigue must have a sit/stand option while on task at work. She can lift up to 20 pounds occasionally and 10 pounds frequently. Additionally the claimant can perform frequent postural, except that the claimant is limited to only occasionally stooping and crouching. The claimant must avoid any more than occasional concentrated exposure to wetness and humidity, and avoid all exposure to hazards such as unprotected heights and moving machinery due to her diabetes and narcolepsy. The claimant is limited to simple, repetitive and routine tasks with no greater than a reasoning level of 2, with no interaction with the general public and only occasional interaction with co-workers.

Tr. 16–17.

3 – OPINION AND ORDER

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[3] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were "not credible to the extent they were inconsistent with the" RFC. Tr. 17; *see also supra* note 2 (identifying plaintiff's RFC). The ALJ's credibility analysis relied on four bases, including: (1) non-compliance with treatment; (2) daily activities; (3) inconsistency with medical evidence; and (4) school attendance. This Court looks to those bases.

First, as to non-compliance with treatment, the ALJ discussed plaintiff's non-compliance at length. This analysis provided:

> One reason she is not credible is her lack of compliance with treatment and recommendations to treat her impairments. Throughout the record, the claimant exhibits significant problems with her ability to maintain

---

[3] "The Cotton test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–408 (9th Cir. 1986)).

4 – OPINION AND ORDER

> compliance with medical treatment. She has been noted to not be following up with medical suggestions which has been repeatedly reiterated to her regarding her sleep hygiene, and has failed to maintain proper sleep hygiene (Exhibit 13F/1 [tr. 520]). She also has not been properly maintaining her diet regarding her diabetes treatment. She has "forgotten" to eat on a few occasions, then has found herself very hungry and has gotten off her diet (Exhibit 18F/65 [tr. 733]). She also is regularly consuming coffee and 44 ounces of soda per day, despite claiming compliance with diabetes mellitus (Exhibit 18F/65 [tr. 733]). The claimant also has not been compliant with maintaining a sleep log in her efforts to treat her sleep disorders (Exhibit 11F/1 [tr. 516]).
>
> The claimant also has disregarded recommendations that she exercise to treat her diabetes. Her providers at OHSU recommended that she get a book on pain management and focus on exercise, specifically reconditioning, stretching, strengthening and increasing activities (Exhibit 18F/25;/65 [tr. 693, 733]). Her providers at Oregon Medical Group have also recommended that she exercise and she has not followed up on these recommendations, as her mother has been concerned about her heart rate increasing during exercise (Exhibit 27F/14 [tr. 1017]). There is no evidence in the record that she has followed up and attempted to exercise. The claimant has also been noted to have a tendency to make excuses, and has not completed 100% of the recommendations her providers have had for her (Exhibit 20F/29 [tr. 868]). Her excuses in response to these issues at hearing failed to explain her lack of compliance.

Tr. 19. Because plaintiff disputes the evidentiary record, this Court looks to the record.

On September 2, 2009, Erik Marsiglia, D.O., and Brett Stacey, M.D., met with plaintiff for an office visit. Dr. Marsiglia reported that plaintiff "has not followed many of our prior suggestions which we reiterated."[4] Tr. 681.

---

[4] On March 20, 2009, Dr. Stacey recommended:

> 1. Referral to a local pain psychologist.
> 2. I suggest the book, Managing Pain Before it Manages You, by Margaret Caudill, M.D., Ph.D.
> 3. Referral to a physical therapist. Focus on reconditioning, stretching, strengthening, increasing activities gradually. In general, increasing her time out of bed and up is important and key. An alternative is aquatic therapy.
> 4. TENS (Transcutaneous Electric(al) Nerve Stimulation) trial.
> . . .

5 – OPINION AND ORDER

On September 24, 2009, Dainis Irbe, M.D., met with plaintiff and administered a sleep consultation. Tr. 516–519. Dr. Irbe noted that "[u]nfortunately she did not fill out the sleep log . . . . She was unable to provide me with a reliable sleep-wake pattern at this point." Tr. 516. Dr. Irbe also indicated that plaintiff "does not exercise," and "consumes one or two cups of coffee and 44 ounces of soda daily." *Id*.

On October 20, 2009, Joanne Miracle, ANP, met with plaintiff for an office visit. At that time, plaintiff had not started physical rehabilitation or read the book suggested by Dr. Stacey. Tr. 671. ANP Miracle also reported that plaintiff's pain "is aggravated by eating, fatty foods, soda" and that plaintiff was not exercising. Tr. 670.[5]

On February 24, 2010, plaintiff met with Kate Cable, R.D., and indicated that her biggest concern was that "she forgets to eat" and often ate about one meal per day. Tr. 733. Plaintiff also reported that she drank two bottled teas (Arizona) each day. *Id*.

On March 6, 2010, plaintiff met with Khol Tran, M.D., to discuss abdominal pain. Plaintiff indicated that she had post prandial pain associated with abdominal distention if she ate excessively. Tr. 641.

On April 21, 2010, plaintiff reported to Thomas Kern, Ph.D., that she walked a few minutes each day in a store or around the house but did not do anything else for exercise. Tr. 780.

On September 22, 2010, ANP Miracle met with plaintiff for an office visit. ANP Miracle noted that plaintiff had the TENS unit, but had not yet used it. ANP Miracle reported:

---

Tr. 686. On July 31, 2009, Scott Kennedy, M.D., reported that plaintiff "initiated some of the recommendations (medications, physical therapy, psychotherapy) there is still some room to maximize the benefits of these therapies and room to start therapies not tried to date (recommended reading and [TENS] unit therapy)." Tr. 689.

[5] ANP Miracle also recorded that plaintiff normally ate at noon, including fast food subway/burgers, pizza roll sandwich, pizza, tacos, burritos, pasta, and canned soup casserole. *Id*. On that date, plaintiff was placed on a 2000 calorie diabetic diet. *Id*.

6 – OPINION AND ORDER

> I expressed my pride in her following through with 75% of what I had recommended she do, she has shown initiative, has tendencies to make excuses, needs encouragement and support in her personal care and being responsible.

Tr. 868. Also on September 22, 2010, Sandra Gallagher, P.T., met with plaintiff for an office visit. At that time, plaintiff indicated she did not exercise and P.T. Gallagher recommended 30 minutes of daily exercise for health and general fitness. Tr. 875.

On January 1, 2011, Neal Berner, M.D., completed a medical evaluation (Physical Summary) and, in reference to the 2009 sleep consultation, noted that plaintiff had a sleep disorder with an irregular sleep pattern and poor sleep hygiene. Tr. 520.

On August 22, 2011, Shadi Miller, M.D., reported that plaintiff "has been minimizing her exercise. Every time she tries to exercise her heart rate goes up and her mother gets concerned. She has basically been resting." Tr. 1017. Dr. Miller "highly recommend[ed] that she start increasing her exercise regimen in case this is related to deconditioning." Tr. 1017.

Having considered this record, this Court finds substantial evidence supporting the ALJ's non-compliance findings. In particular, plaintiff repeatedly declined to exercise despite recommendations from various doctors.[6] *See also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("[U]nexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a relevant factor in assessing claimant's credibility). These findings constitute a specific, clear and convincing reason for rejecting plaintiff's testimony.

Second, as to plaintiff's daily activities, the ALJ found:

> The claimant's credibility is also at question because of her activities of daily living, which appear to be rather robust. The claimant's own mother reported that she is able to cook for the family on occasion, doesn't drive

---

[6] Plaintiff's reliance on *Orn v. Astrue*, 495 F.3d 625, 636–37 (9th Cir. 2007) is misplaced. Here, the ALJ focused on exercise in plaintiff's diabetes treatment; not obesity treatment. Moreover, plaintiff has not suggested that financial difficulties limited her access to treatment.

7 – OPINION AND ORDER

>because she "doesn't want to," spends time with others watching movies and television and visiting on a daily basis, and regularly spends time with her boyfriend's family (Exhibit 7E/3–5 [tr. 228–30]). The claimant also testified that she regularly checks Facebook and occasionally uses Twitter, and regularly uses the internet. 21F/3 [tr. 931] (greater than two hours per day). These activities demonstrate physical and mental functioning, and though the claimant does have severe impairments which impair her to some degree, her activities of daily living demonstrate that she is not as limited as she alleges. 6F/2 [tr. 480] (trips to park, coast, and photography).

Tr. 19. Plaintiff again disputes the ALJ's interpretation of the record.

Plaintiff, during the administrative hearing, repeatedly emphasized her fatigue. Plaintiff testified that she generally woke up between 10:00 a.m. and 12 p.m., and spent large portions of her day sleeping in her room (1–5 hours each day), or working on her laptop (1 ½ hours each day). Tr. 39–40, 48. Plaintiff also indicated that she texted her friends, checked Facebook daily, and occasionally checked Twitter. Tr. 36. To the extent that that these reported activities differ with those reported by plaintiff's mother, *see supra* § II, this Court recognizes that the ALJ's "rather robust" interpretation may be reasonable.[7] However, plaintiff's daily activities, even as articulated by Mrs. Langford, do not evidence an ability to work and are insufficient to discredit plaintiff's allegations. *See Orn*, 495 F.3d at 639.

>Third, as to inconsistency with the medical evidence, the ALJ found:

>>The claimant also made a number of statements which are inconsistent with the medical evidence in the record. For instance, she testified that she is bedridden all day and doesn't have the energy to work. However, the claimant's providers have reported a normal energy level in the past when conducting examinations of the claimant (see e.g. Exhibit 18F/106 [tr. 774]; 20F/7 [tr. 847]). Furthermore, at the hearing the claimant greatly exaggerated the extent of her diabetes and her blood sugar level. She testified that her blood sugars run 200-300 on goods days, and up to 600 on

---

[7] The record cited by the ALJ does not demonstrate that plaintiff was "able to cook for the family on occasion." Rather, Mrs. Langford indicated that plaintiff could "do small meals inconsistently," but that Mrs. Langford "cooked for the family." Tr. 228.

8 – OPINION AND ORDER

> "bad days."[8] This is inconsistent with medical evidence, as her blood sugar levels have been reviewed and are considerably lower (Exhibit 20F/9 [tr. 848]; 22F/5 [tr. 938]; 18F/106 [tr. 774]; 20F/8 [tr. 848]). This is demonstrative of the claimant exaggerating the severity of her symptoms, and shows that her testimony is inconsistent with the objective medical evidence.

Tr. 19–21. This Court looks briefly to the record.

On November 20, 2009, Bruce Boston, M.D., met with plaintiff for a type 1 diabetes follow up. Dr. Boston noted that improvements in plaintiff's blood sugar "correlate[d] with increased activity and becoming more involved in activities rather than lying in bed." Tr. 773. Plaintiff reported a normal energy level and blood sugar values ranging between 60 and 480. Tr. 774.

On October 12, 2010, Dr. Miller recorded that plaintiff's blood sugar had been running in the range of 200-400 on a regular basis and that it climbed "higher on Sunday in the 500 range." Tr. 938.

On March 9, 2011, Dr. Boston met with plaintiff for ongoing follow up. Plaintiff reported that she had "been doing fairly well since her last visit [November 18, 2010]" and that she had a normal energy level. Tr. 846, 848. Plaintiff provided Dr. Boston with records from "the past several weeks in a logbook." Tr. 848. Those records revealed blood sugar values ranging between 100 and 330.

The ALJ, having considered this evidentiary record, reasonably and rationally interpreted the medical evidence as inconsistent with plaintiff's hearing testimony. Plaintiff testified that she was constantly fatigued and experienced blood sugar values ranging between 300 and 600 up to four times each week. Tr. 52, 60. In contrast, the medical evidence documented normal energy

---

[8] Plaintiff testified that her blood sugar on bad days could run "anywhere from 300-600." Tr. 52. Plaintiff indicated that she had a bad day "two to three times a week," tr. 60; *see also* tr. 52 ("A majority of the week."), and that this had been going on for "seven or eight years," tr. 52.

9 – OPINION AND ORDER

levels and a narrower range of blood sugar values. *See* tr. 773–74, 846, 848, 938. This reason is specific, clear and convincing for rejecting plaintiff's testimony.

Fourth, as to plaintiff's school attendance, the ALJ found:

> There also is some evidence that the claimant's problems in school are more related to her conduct, rather than an actual medical basis. The claimant was given few accommodations at West Lake Tech, and was requiring a doctor's note for any absences (Exhibit 16E/4 [tr. 271], 17E/3 [tr. 279]). The claimant furthermore has a lot of absences from school (Exhibit 16E/7 [tr. 273–74]). This all reflects adversely on the claimant's credibility. Comparing school records with provider visits to assess whether claimant's medical issues alone are the cause for the absences, compare 16E/7 [tr. 274] no show with the same date medical treatment at 20F/7 [tr. 848] – she reported "normal energy levels" at this treatment visit. Again, the claimant has severe medical issues, but this evidence tends to show that [] she chose to attend a medical visit and was not incapacitated for school given the objective signs. This seems borne out by Ex. 16D/4[9] where the school demands a doctor's note for any failure to appear.

Tr. 20. Plaintiff argues that the school absence identified by the ALJ (March 9, 2011) can be attributed to travel time. On that date, plaintiff commuted from Springfield to Portland, Oregon for a 12:45 PM appointment with Dr. Boston. Having reviewed the record, this Court declines to find that the ALJ's reliance on school absences and/or limited school-related accommodations is sufficient to discredit plaintiff's allegations.

Accordingly, the ALJ's reliance on plaintiff's non-compliance with treatment and the medical evidence is sufficient to reject plaintiff's testimony regarding the severity of her symptoms. *See also* tr. 483 (noting concern that plaintiff's level of pain "may be exaggerated and

---

[9] The ALJ intended to cite Exhibit 16E, tr. 271. The letter referenced, dated May 13, 2011, stated:

> If you have any absences due to medical conditions, you will provide a **doctor's excuse** to Ms. Ann Claasen, Director of Student Services.

Tr. 271 (emphasis in original).

10 – OPINION AND ORDER

that there is some attention-seeking behavior on her part."); tr. 492 (indicating that plaintiff's "statements d[id] not appear to be credible").

## II. Tabitha Langford

Plaintiff contends that the ALJ erred in his consideration of Tabitha Langford's testimony. Pl.'s Br. 19, ECF No. 17. In response, defendant argues that the ALJ sufficiently explained his reasons for assigning limited weight to Mrs. Langford's testimony. Def.'s Br. 5, 12–14, ECF No. 18.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)).

Mrs. Langford, plaintiff's mother, submitted a "Function Report: Third Party" on April 20, 2009. *See* tr. 226–33. In that report, Mrs. Langford described plaintiff's daily activities as including: caring for her diabetes; attending doctor appointments and online high school; watching television/movies; and spending time with her boyfriend/boyfriend's family. Tr. 226, 230. Mrs. Langford also indicated that plaintiff can prepare small meals inconsistently, launder clothes once a week, and shop for clothes and food once a week if accompanied by Mrs. Langford. Tr. 228–29.

On September 20, 2011, Mrs. Langford testified at plaintiff's administrative hearing. *See* tr. 64–83. In that testimony, Mrs. Langford noted that, in a typical day, plaintiff napped often, worked on her laptop (for fifteen to twenty minute increments) to complete some school work,

11 – OPINION AND ORDER

cared for her diabetes, scheduled medical related appointments, and watched some television. Tr. 65–66, 75; *see also* tr. 82 (indicating that plaintiff went to a movie with her boyfriend about once a month). Mrs. Langford repeatedly emphasized plaintiff's fatigue. *See* tr. 73–74, 77.

The ALJ, having reviewed this evidence, found:

> Regarding the lay witnesses, I assign limited weight to the opinion of the claimant's mother due to inconsistencies in her opinions. Tabitha Langford, the claimant's mother, testified at the hearing and also provided a function report. She testified that the claimant's main problems were dehydration and fatigue, but in Exhibit 7E [tr. 226–33], she reported rather robust activities of daily living on the part of the claimant – these activities were inconsistent with Ms. Langford's hearing testimony. The medical evidence does not demonstrate the problems that Ms. Langford testified to, and there were reports in the medical record of the claimant having normal energy levels. Furthermore, at the hearing, it appeared that the claimant's mother had scant time supervising the claimant at all, in that the claimant has a boyfriend who lives with her in the house and there are seven foster children there in addition. Therefore, it appears that the mother's observations would be very limited and she candidly admitted that she did not closely supervise the claimant to determine how she is doing on her online schoolwork.

Tr. 21 (internal quotation marks omitted). Plaintiff contends that the ALJ erred in his consideration of the daily living activities listed in the Function Report, his reliance on the medical evidence, and his characterization of Mrs. Langford's ability to observe plaintiff. Pl.'s Br. 19, ECF No. 17.

As to the Function Report, plaintiff argues that the daily living activities described are "not significant" and that the ALJ erred in characterizing them as "rather robust" in comparison to Mrs. Langford's hearing testimony. *See id*. This Court, having compared the two evidentiary sources, is not prepared to find the ALJ's interpretation unreasonable. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports . . . the ALJ's decision, we may not substitute our judgment for that of the ALJ." (citation omitted)).

In contrast to the Function Report, Mrs. Langford's hearing testimony emphasized plaintiff's fatigue and lack of energy. *See* tr. 73–74, 77. Likewise, Mrs. Langford omitted any reference to plaintiff's ability to prepare small meals, launder clothing, and shop for clothing and groceries. These differences constitute a reason germane to partially disregard Mrs. Langford's testimony.

As to the medical evidence, this Court previously discussed the treatment notes of Dr. Boston and Dr. Miller. *See supra* § I (discussing tr. 773–74, 846, 848, 938). Those notes reflect normal energy levels and lower blood sugar values than reported by plaintiff. *See also* tr. 1077, 1081 (indicating that more strict diabetic control and exercise would significantly decrease absences). To the extent that Mrs. Langford emphasized plaintiff's fatigue, the ALJ's reliance on the medical evidence constitutes a reason germane to disregard Mrs. Langford's testimony.

As to Mrs. Langford's ability to observe plaintiff, the ALJ found that Mrs. Langford "had scant time supervising" plaintiff. Tr. 21. Plaintiff argues that constant supervision is not necessary for frequent observation. Pl.'s Br. 19, ECF No. 17. Again, this Court is not prepared to find the ALJ's interpretation of the evidence unreasonable. At the time of hearing, plaintiff resided at her parent's home[10] with her three biological siblings (ages 19, 17 and 16), her boyfriend, two foster children (ages 14 and 9), three adopted siblings (ages 3, 3, and 3), her mother and father, and a family dog. Tr. 78. Mrs. Langford, a stay at home mother, tr. 65–66, agreed that plaintiff "for the most part" was left alone to do her day-to-day activities. Tr. 67.

Accordingly, these three bases constitute reasons germane to partially disregard Mrs. Langford's testimony. *See also Lewis*, 236 F.3d at 512 ("In all, the ALJ at least noted arguably germane reasons for dismissing [Ms. Frisch's] testimony, even if he did not clearly link his determination to those reasons.").

---

[10] Mrs. Langford's home is approximately 2100 to 2200 square feet in size, excluding the detached garage. Tr. 78.

### III. Dr. Miller

Plaintiff contends that the ALJ erred in his consideration of Dr. Miller's opinion. Pl.'s Br. 17–18, ECF No. 17. In response, defendant argues that the ALJ provided sufficient reasons for the assigning "no weight" to Dr. Miller's opinion. Def.'s Br. 9–12, ECF No. 18.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citation omitted). When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id*. (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

On September 6, 2011, Dr. Miller submitted a medical evaluation in response to plaintiff's request. Tr. 964–68. Dr. Miller described plaintiff's symptoms, e.g., abdominal pain, fatigue, and elevated blood sugars, and indicated that plaintiff would have to lie down or rest periodically during the day because of plaintiff's reported fatigue, abdominal pain, and shortness of breath with activity. Tr. 966. Dr. Miller concluded that plaintiff would be unable to maintain a regular work schedule more than two days per month. Tr. 967.

In a letter faxed January 23, 2012, Dr. Miller clarified that his conclusion regarding plaintiff's ability to maintain a work schedule was "based on patients reported symptoms of fatigue, abdominal pain, tachycardia with limited activity." Tr. 1077.[11] Dr. Miller also opined

---

[11] Plaintiff submitted this second opinion to the Appeals Council.

14 – OPINION AND ORDER

that "more strict diabetic control and exercise" would "significantly decrease[]" plaintiff's potential absences. Tr. 1077, 1081.

The ALJ, having reviewed Dr. Miller's medical evaluation, assigned no weight to Dr. Miller's opinion because it was inconsistent with the medical evidence of record, based largely on the plaintiff's own subjective complaints, and lacked an objective basis. *See* tr. 20. The ALJ further noted:

> Dr. Miller's comment that the claimant would miss more than two days per month due to her disability deserves some attention. Typically, it is hard for a treating source to figure out how many days exactly a claimant would miss, but here this [] may be a projection given the number of emergency room visits the claimant has had (See Exhibit 1F [tr. 280–415], 15F [tr. 526–628]). However, in this case it appears that many of these emergency room visits were secondary to the claimant failing to maintain proper blood sugar levels. If the claimant were compliant with her diabetes treatment (such as following recommendations, discussed above) and exercised regularly, her emergency room visits would likely be greatly reduced.

Tr. 20.

As to the medical evidence of record, defendant directs this Court's attention to the opinions of Sharon Eder, M.D., and Neil Berner, M.D. Def.'s Br. 10, ECF No. 18. In June 2009, Dr. Eder submitted a physical assessment and found plaintiff capable of standing, walking, or sitting about 6 hours in an 8-hour workday with normal breaks. Tr. 488. In January 2010, Dr. Berner submitted a physical summary which confirmed Dr. Eder's earlier physical assessment. These opinions, expressly adopted by the ALJ, *see* tr. 20, conflict with Dr. Miller's conclusion that plaintiff would be unable to maintain a regular work schedule more than two days per month.

As to plaintiff's subjective complaints, plaintiff concedes that Dr. Miller took her subjective reports into account. However, plaintiff also argues that Dr. Miller diagnosed "poorly

controlled diabetes, chronic abdominal pain related to gastroparesis due to diabetes and irritable bowel syndrome, and possible nephropathy, among other things." Pl.'s Br. 18, ECF No. 17; *see also* tr. 965 (identifying diabetes type-I with neuropathy; gastroparesis; and pain disorder with psychological features, chronic, irritable bowel syndrome as severe impairments under step two of the sequential evaluation). Because the ALJ expressly recognized these additional limitations as severe impairments, any error in assigning "no weight" instead of "limited weight" to Dr. Miller's opinion was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that "[w]e have . . . deemed errors harmless where the ALJ misstated the facts . . . but we were able to conclude from the record that the ALJ would have reached the same result absent the error." (citation omitted)).

Accordingly, the ALJ gave specific and legitimate reasons for rejecting Dr. Miller's opinion where that opinion "was *based on* patient's reported symptoms." Tr. 1077 (emphasis added); s*ee also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (finding that an ALJ gave specific and legitimate reasons for partially rejecting a physician's opinion where the opinion was "based almost entirely on the claimant's self-reporting.").

## IV. RFC Limitations

The ALJ called Vocational Expert (VE) Jeffrey Tittelfitz to testify as to whether plaintiff was capable of making an adjustment to other work. *See* tr. 83–89. The ALJ asked VE Tittelfitz a series of hypothetical questions detailing plaintiff's limitations. These questions restricted plaintiff to non-exertional limitations, including: "simple routine and repetitive tasks, no greater than reasoning level number two with no interaction with the public and only occasional interaction with co-workers." Tr. 85. Plaintiff argues that this "simple routine and repetitive" limitation does not incorporate her limitations in concentration, persistence or pace. Pl.'s Br. 20,

16 – OPINION AND ORDER

ECF No. 17; *see also* tr. 16 (concluding that plaintiff had moderate difficulties with regard to concentration, persistence, or pace). This Court is not persuaded.

In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit joined the Sixth and Eighth Circuits in recognizing that an "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony." The Court held that an ALJ's limiting instruction of "simple tasks" adequately incorporated an examining doctor's observations that plaintiff had a "slow pace, both with thinking and her actions" and was "moderately limited" in her ability to "perform at a consistent pace without an unreasonable number and length of rest periods." *Id*. at 1173; *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (holding that the ALJ's limiting instruction of "simple, routine, repetitive work" adequately accounted for "the finding of borderline intellectual functioning."). As in *Stubbs-Danielson*, the hypothetical limitations posed by the ALJ adequately captured plaintiff's moderate deficiencies in concentration, persistence and pace, and were consistent with the medical testimony.[12] *See also Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) ("[T]he ALJ is 'free to accept or reject these restrictions . . . as long as they are supported by substantial evidence.'"). Thus, the ALJ's RFC findings properly incorporated plaintiff's limitations.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

---

[12] *See, e.g.*, tr. 479 (Paula Belcher, Ph.D., reported "[t]here is no evidence in these data of any significant impairment in attention, concentration, or memory"); tr. 511 (Dorothy Anderson, Ph.D., noted that plaintiff "is limited to simple routine and work-like procedures by her focus on her physical problems, and her inappropriate attention-getting behaviors"); tr. 519 (Kordell Kennemer, PsyD, confirmed Dr. Anderson's mental RFC).

17 – OPINION AND ORDER

IT IS SO ORDERED.

DATED this 5th day of September, 2014.

_____s/Michael J. McShane_____
**Michael J. McShane
United States District Judge**

18 – OPINION AND ORDER